[No. 5369.]
[No. 3018 C. A.]

## HENDERSON v. SPRATLEN.

1. **Contracts — Construction — Certainty**—The promise of a man to a woman, upon consideration, to "take care of and support her," so long as she may suffer from certain infirmities, is not void for uncertainty.—P. 282

2. **Contracts—Defenses**—The promise of a man to a woman that, in consideration of her relinquishing him from an engagement of marriage, he will support her during a specified disability, is not abrogated or released by her subsequent marriage to another.—P. 281.

3. **Contracts—Valid**—A woman is seduced under promise of marriage and maintains illicit relations with her affianced husband. In consideration of her releasing him from the promise of marriage, he agrees to support and care for her. His promise is not opposed to good morals.—P. 282.

*Appeal from the Denver District Court.*
*Hon. Peter L. Palmer, Judge.*

Messrs. WHITFORD & MAY, and Mr. O. N. HILTON, for appellant.

Mr. GEORGE P. STEELE and Mr. C. F. CLAY, for appellee.

CHIEF JUSTICE STEELE delivered the opinion of the court:

The plaintiff alleged in her complaint, and proved, that the defendant promised to marry her, and at divers and innumerable times thereafter,

avowing his sincerity of purpose to marry her, he procured her to cohabit with him; that said cohabitation began in the winter of 1889 and continued up to the month of July, 1893. She also alleges and proves that, at the request of the defendant, she submitted to several surgical operations, by reason of which she sustained very serious and painful injuries to her person, and that by reason of the said operations she has been sick, sore and lame, and will continue so to be, and she has also received great and prolonged nervous shocks; and that the said operations and injuries have resulted in shattering and ruining her nervous system and have rendered her, and still render her, and will always render her, weak, sickly and wholly unable and unfit to earn a livelihood and to maintain and support herself, and unfit to marry and to perform domestic and wifely duties; that by reason of the operations aforesaid, and as a result of her being unable to procure proper attention, through the failure of the defendant to perform the terms of his agreement to have her properly taken care of, it will be necessary to have one of her legs amputated. It also appears that in the year 1893 the defendant visited plaintiff at her home in St. Joseph, Missouri, and then and there informed her that he could not marry her because his parents objected to the marriage, and that he then and there promised her, as stated by the plaintiff: "If I would release him from his promise of marriage, he would take care of me and support me just so long as I suffered from this limb, or any injuries"; which said promise on the part of the defendant the plaintiff then and there accepted, although the plaintiff was at that time, and at all times previous thereto, ready and willing to marry the defendant.

It developed upon the trial that in the year 1897 the plaintiff had married a man by the name of Lee,

and had lived with him for two or three years as his wife, when he procured a divorce.·

The court instructed the jury to return a verdict in favor of the defendant, which. it did, and thereupon judgment in favor of the defendant was duly entered. From this judgment the plaintiff took an appeal to the court of appeals.

The allegations of the complaint are sustained by the evidence, and it appeared from the testimony· that the defendant had paid to the plaintiff certain sums of money upon account of his contract to maintain and support plaintiff, as late as the year 1902.

The defendant claims in support of the judgment: (1) That the alleged contract is void as against public policy and good morals; (2) That there is no valid consideration for the contract; (3) That there could be no novation of a void contract; (4) That the contract is too indefinite and uncertain.

In support of the defendant's contention that the alleged contract is void as against public policy and good morals, counsel claim that the testimony shows that the promises of marriage as made were in. consideration of present and future intercourse and cohabitation, which ended in the summer of 1893, and that a contract of marriage in consideration of sexual intercourse is void and contrary to good morals. But we do not so read the plaintiff's testimony. From the complaint and from her testimony it appears that the cohabitation did not take place until after the promise to marry, so that the consideration for the promise to marry was not that of present or future sexual intercourse.

The court adopted the theory of defendant's counsel, that, assuming the contract to be valid, it was abrogated by the marriage of the plaintiff, and that the plaintiff was not entitled to recover because public policy intervened to prevent.

No authorities are cited by counsel holding that a contract such as is shown to have been entered into between the parties here is terminated by the marriage of the woman. It is not contended that the contract by its terms terminated upon the marriage of the woman, but that there must be inserted into the contract, by a broad public policy, words which relieve the man from liability after the marriage of the woman. It is probably true that a married woman cannot maintain an action to compel support under a contract made upon the consideration and under the circumstances the contract sued on in this case was made. But when, as in this case, the obligation of the husband ceases by reason of a divorce, and it appears that the woman is unable to support herself, public policy does not require that the contract to support should be held void. It appears that the plaintiff is unable to support herself and that she is unfit to work and unfit to marry, or to perform domestic or wifely duties; and by her testimony she places the responsibility for her condition upon the defendant. Someone must support her, as she cannot support herself. The testimony shows that she and her mother are living in a condition of almost destitution. The defendant has made a contract to support her. He says that public policy should relieve him from this burden. If he is relieved, the public must take upon itself the burden of her support; but we know of no consideration of public policy that would permit the defendant to thus shift his burden and cast it upon the public. Moreover, long after the plaintiff's marriage, and long after her divorce, the defendant made a payment on account of the contract, from which it may fairly be inferred that he did not believe that he was relieved of his obligation because the plaintiff had married.

The defendant claims, and urges as his second

and third grounds in support of the judgment, that there was no consideration for the contract, and that there can be no novation of a void contract. These positions are based upon the ground that the contract of marriage was illegal and void because based upon an illegal consideration, but the testimony does not bear out the defendant's contention that the contract of marriage was based upon an illegal consideration. The testimony of the plaintiff shows that there were no illicit relations between her and the defendant until a long time after the defendant had promised to marry the plaintiff. Then, when the plaintiff, in the year 1893, agreed to release the defendant from the promise of marriage in consideration of his agreement to support and maintain her, and provide her with medical attendance, she was not substituting a valid contract for a void one, but she was making a legal contract and releasing the defendant from a legal contract; and the law authorizes and allows contracts of this character to be made, and when so made the substituted contract will be enforced.

The defendant states that the contract is so indefinite and uncertain that it cannot be enforced. We think that objection to the enforcement of this contract is not tenable. The plaintiff has stated what amount is necessary for her support. A jury should determine what amount is reasonably necessary, based upon the testimony, for her support; and this contract should not be held to be unenforceable merely because an amount to be paid was not fixed by the terms of the agreement.

The case should be submitted to the jury, and because it was taken from the consideration of the jury, the judgment is reversed.        *Reversed.*

Mr. Justice Goddard and Mr. Justice Bailey concur.